IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DEREK SMITH LAW GROUP, PLLC,** <br> Plaintiff, | CIVIL ACTION |
| v. | |
| **SETH CARSON, doing business as "CARSON LEGAL GROUP,"** <br> Defendant. | NO. 25-1238 |

HODGE, J.                                                                                                                November 26, 2025

### MEMORANDUM

The issue before the Court arises from a former employment relationship between Plaintiff Derek Smith Law Group, PLLC ("Plaintiff" or "DSLG") and Defendant Seth Carson ("Defendant" or "Carson"). DSLG brings the following claims against Carson: breach of fiduciary duty (Count I), unjust enrichment (Count II), conversion (Count III), claim for an accounting (Count IV), fraud (Count V), and breach of contract (Count VI). (ECF No. 1.) DSLG seeks damages for all of its claims as well as a declaratory judgment for breach of contract. (*Id.* at 15.) Carson now submits a Motion to Vacate Default Judgment ("Motion to Vacate") (ECF No. 10) and Motion to Dismiss for Lack of Subject Matter Jurisdiction ("Motion to Dismiss") (ECF No. 12.) For the reasons that follow, the Court denies both Motions.

I.   BACKGROUND

From June 2018 to March 2024, Carson was an associate attorney at DSLG's Philadelphia office, where he earned commission from the cases he handled. (ECF No. 1 at ¶¶ 11-12.) DSLG alleges that, during his employment with DSLG, Carson stole from DSLG by—among other things—using the law firm credit card to make personal expenses; miscalculating his commissions "so that DSLG would pay him more than what was owed"; tricking management into paying him

money based on false representations that "he had more attorneys fees coming in than was the truth"; failing to pay referring attorneys on his cases and hiding this failure from DSLG, "thereby wrongfully increasing his commissions and causing DSLG to still owe said referral fees"; failing to reimburse DSLG for sanctions he was ordered to pay; and failing to repay loans "by DSLG to [himself]." (*Id.* at ¶ 13.) In total, DSLG asserts that Carson owes DSLG approximately $115,000. (*Id.* at ¶ 34.)

After DSLG terminated his employment on March 12, 2024, Carson "took various cases with him." (*Id.* at ¶ 37.) A week later, on March 19, DSLG proposed to Carson a contract setting forth a number of terms, including that (1) "Carson will provide signed retainers for all cases that he takes on from DSLG within 3 days of this agreement or written communications from said clients that they are leaving DSLG and going with [] Carson"; (2) "For those who leave DSLG and go with Seth Carson, the fee split shall be the same as when Seth Carson was with DSLG"; and (3) "Seth Carson must immediately obtain and provide proof of legal malpractice insurance for all cases that he handles with at least $1 million in coverage." (*Id.* at ¶ 38.) The parties ultimately agreed to this contract ("2024 Contract"). (*Id.* at ¶¶ 39-41.) However, DSLG alleges that, "[d]espite his explicit promises," Carson breached the 2024 Contract by not providing proof of malpractice insurance, not securing signed retainer agreements for all transferred clients, and not paying DSLG the portions of fees that were owed to the firm. (ECF No. 13 at 5.)

On November 24, 2024, DSLG emailed Carson a draft complaint, and then emailed him again on March 4, 2025, warning him that litigation was imminent. (ECF No. 13-1 at 4-5.) DSLG filed its Complaint on March 7, 2025. (ECF No. 1.) That same day, Carson responded, "I am going to suggest you withdraw the complaint that was just filed . . . I have been trying to work with you in good faith and I would suggest you withdraw the complaint now so that can continue." (ECF

No. 13-1 at 7-8.) DSLG replied that the Complaint would be withdrawn only if the parties agreed to a signed settlement. (*Id.* at 7.)

After being served on March 20, 2025, (ECF No. 5), Carson failed to file an answer or motion in response to the Complaint, leading DSLG to request default on April 25. (ECF No. 6.) The Clerk of Court entered default against Carson that same day. (ECF No. 7.) On May 6, DSLG moved for default judgment. (ECF No. 8.) This Court granted DSLG's motion on May 20 and left the amount of the judgment to be determined by the Court following a damages hearing. (ECF No. 9.) Two days later, Carson filed the instant Motions (ECF Nos. 10, 12) and DSLG filed responses thereto (ECF Nos. 13, 14).

## II.     LEGAL STANDARD

Rule 60(b) of the Federal Rules of Civil Procedure authorizes district courts to set aside a final default judgment due to, among other reasons, "mistake, inadvertence, surprise, or excusable neglect" and "for any other reason that justifies relief." Fed. R. Civ. P. 60(b)(1), (6). The decision to set aside entry of default judgment pursuant to Rule 60(b) is within a district court's discretion. *See Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951). As the Third Circuit has explained, determining whether a district court appropriately exercised its discretion requires an analysis of the following factors: (1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; and (3) whether the default results from the defendant's culpable conduct. *U.S. v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984).

"The [C]ourt notes that it does not need to hold that all three factors are satisfied to set aside an entry of default [judgment]." *Hydroworx Int'l, Inc. v. Echelon Fitness Multimedia, LLC*, No. CIV.A. 25-689, 2025 U.S. Dist. LEXIS 217687, at *4 (E.D. Pa. Nov. 5, 2025) (citing *Emerson Radio Corp. v. Emerson Quiet Kool Co.*, No. CIV.A. 22-1809, 2023 U.S. App. LEXIS 17434, at

*7 n.8 (3d Cir. July 11, 2023)). "Even so, the district court should carefully consider all three factors." *Id.* (citing *Doe v. Hesketh*, 828 F.3d 159, 175 (3d Cir. 2016)).

### III. DISCUSSION

In his Motion to Vacate, Carson argues that the Court should set aside the default judgment because his delay in responding "was neither willful nor prejudicial, and he has acted in good faith to respond to the default." (ECF No. 10 at 1-2.) Moreover, Carson contends that, in addition to having "a complete meritorious defense to [DSLG's] substantive claims," he "is prepared to assert several examples of procedural deficiencies that provide a complete meritorious defense." (*Id.*) The Court is unpersuaded.

#### a. Prejudice

Carson contends that DSLG would not be prejudiced if the Court granted his Motion to Vacate because "it has been about two weeks since Plaintiff filed the Motion for Default." (ECF No. 10-1 at 16.) DSLG counters that (1) "[v]acatur would reopen the case to contentious litigation with a pro se opponent who has a track record of delaying proceedings"; (2) "[t]he longer litigation drags on, the more difficult it may be for Plaintiff to marshal evidence, especially as Defendant has left the firm and any internal witnesses may move on or forget details"; (3) "Defendant may use the additional time to shield or dissipate assets, hampering Plaintiff's eventual recovery"; and (4) "[t]o undo the judgment now would put Plaintiff in a worse position than if Defendant had answered in the first place, because Plaintiff has already revealed much of its case (through the default motion affidavits) without any reciprocal discovery from Defendant." (ECF No. 13 at 22-24.)

Prejudice to a party occurs when "circumstances have changed since entry of the default such that plaintiff's ability to litigate its claim is now impaired in some material way or if relevant

evidence has become lost or unavailable." *Accu-Weather, Inc. v. Reuters, Ltd.*, 779 F. Supp. 801, 802 (M.D. Pa. 1991). Conversely, prejudice does not occur simply by "requiring a party to litigate its claim on the merits " *Broad. Music, Inc. v. St. George & Mary, Inc.*, No. CIV.A. 16-2235, 2017 U.S. Dist. LEXIS 125566, at *2 (M.D. Pa. Aug. 9, 2017).

DSLG would not be prejudiced by the vacatur of default judgment. First, DSLG identifies inconveniences typical of litigation, such as conducting extended discovery, subpoenaing witnesses, and waiting for judgment. *See Sourcecorp Inc. v. Croney*, 412 F. App'x. 455, 460 (3d Cir. 2011); *see Collura v. Ford*, No. CIV.A. 13-4066, 2016 U.S. Dist. LEXIS 13965, at *38 (E.D. Pa. Feb. 3, 2016) (stating that vacatur of default judgment is not prejudicial when the non-defaulting party must do what it "was going to be required to do, but for a fortuitous event"). Additionally, DSLG does not identify evidence that is lost or will be compromised; rather, it argues only that evidence *may* be hindered. DSLG's "speculative fear of loss of evidence" does not suffice to show prejudice. *Natasha C. v. Visionquest*, No. CIV.A. 03-1903, 2003 U.S. Dist. LEXIS 14631, at *8 (E.D. Pa. Aug. 25, 2003) (finding no prejudice where plaintiffs believed a witness could become unavailable). DSLG's assertion that Carson gains an unfair preview of DSLG's evidence and legal arguments is equally unconvincing. *See In re O'Brien Env't Energy, Inc.*, 188 F.3d 116, 127 (3d Cir. 1999) ("[P]rejudice is not merely the loss of an advantageous position but must be something more closely tied to the merits of the issue.") Finally, the delay of only three months between the filing of the Complaint and the Motion to Vacate is insufficient to demonstrate prejudice. *See Scottsdale Ins. Co. v. Littlepage*, No. CIV.A. 92-2734, 1993 U.S. Dist. LEXIS 9557, at *7 (E.D. Pa. July 16, 1993) (holding that nearly one-year delay imputed no prejudice).

b. **Meritorious Defense**

A meritorious defense is one that "if established on trial, would constitute a complete defense to the action." *$55,518.05 in U.S. Currency*, 728 F.2d at 195 (quoting *Tozer*, 189 F.2d at 244). A "defendant is not required to prove beyond the shadow of a doubt that it will win at trial, but merely to show that it has a defense to the action which at least has merit on its face." *Accu-Weather*, 779 F. Supp. at 803. Nonetheless, merely reciting "simple denials or conclusionary statements" is not enough to establish a meritorious defense. *$55,518.05 in U.S. Currency*, 728 F.2d at 195.

Carson contends that he has several meritorious defenses to DSLG's claims, including that DSLG's claims are time-barred, DSLG's fraud claim lacks the specificity required by Rule 9(b) of the Federal Rules of Civil Procedure, the Court lacks subject matter jurisdiction, an arbitration agreement governs any claim arising from the employment relationship, and DSLG miscalculated the balances on a spreadsheet it provided to Carson summarizing his debt. (ECF No. 10-1 at 3.) DSLG retorts that "Defendant's motion offers little beyond unsupported accusations that Plaintiff miscalculated commissions and an irrelevant and misplaced challenge to this Court's jurisdiction." (ECF No. 13 at 2.)

The Court addresses each of Carson's defenses in turn.

### i. Time-Barred Claims

Carson argues that the Complaint may be limited "whole or in part" because it "alleges conduct spanning (7) years between July 2018 and March 2025, but provides no specific action, occurrence, or dates," instead relying on "general conclusory statements beginning in [or] around 2019." (ECF No. 10-1 at 3.) Carson further asserts that, under Pennsylvania law, claims for breach of fiduciary duty, conversion, and fraud are subject to a two-year limitations period, and claims for unjust enrichment, breach of contract, and declaratory judgment are subject to a four-year

limitations period. (*Id.* at 3-4.) Because the Complaint lacks allegations that support tolling the relevant limitations periods and DSLG does not address Carson's statute of limitations defense in its Response in Opposition to the Motion to Vacate, the Court will accept for this limited purpose, without deciding, that at least some of the claims in the Complaint are time-barred. However, the Court does not find DSLG's breach of contract claim to be time-barred, as that claim is premised on Carson's alleged breach of the 2024 Contract, which the parties entered into less than a year before DSLG filed the Complaint.

### ii. Lack of Specificity of Fraud Claim (Count V)

A plaintiff attempting to assert a fraud claim must meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b). Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."). Pursuant to Rule 9(b), a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the "precise misconduct with which [it is] charged." *Lum v. Bank of America*, 361 F.3d 217, 223-24 (3d Cir. 2004), *abrogated on other grounds recognized by In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 323 n.22 (3d Cir. 2010). "Plaintiffs may satisfy this requirement by pleading the 'date, place or time' of the fraud, or through 'alternative means of injecting precision and some measure of substantiation into their allegations of fraud.'" *Id.* at 224 (quoting *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984)).

In Count V, DSLG avers that Carson (1) despite knowing "that he did not have permission to use the company credit card for personal expenses," made "numerous personal charges on the firm credit card in order to defraud and deceive Plaintiff out of significant sums of money"; (2)

7

"caused his child's mother to charge DSLG for process server fees that were unnecessary and/or grossly inflated"; and (3) "lied to and omitted from his commission calculations referral fees owed on his cases so as to wrongfully increase his commissions." (ECF No. 1 at ¶¶ 69-72.) Because DSLG's statements provide no facts from which the Court can substantiate DSLG's claims (much less the time or place of the alleged false representations), the Court finds that DSLG has not satisfied the requirements of Rule 9(b) for its fraud claim.

### iii. Lack of Subject Matter Jurisdiction

Carson argues that the default judgment is void for lack of subject matter jurisdiction because he and DSLG are not completely diverse. DSLG brought this action under 28 U.S.C. § 1332(a), alleging complete diversity of citizenship between the parties. (ECF No. 1 at ¶ 5.) As DSLG is a professional limited liability company (LLC), its citizenship is determined by the citizenship of its members. *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 418 (3d Cir. 2010). It is undisputed that Carson is a citizen of Pennsylvania (ECF No. 1 at ¶¶ 8-10.) Thus, if any member of DSLG is also a citizen of Pennsylvania, diversity is destroyed. The citizenship of an LLC's members or partners at the time the complaint is filed is determinative. *Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 570-71 (2004) (discussing time-of-filing rule for diversity jurisdiction).

According to Carson, the "three managing partners of the Philadelphia office" during his employment—Sam Wilson ("Wilson"), Caroline Miller ("Miller"), and Scott Diamond ("Diamond")—"were domiciled in Pennsylvania and were titled, treated and held out to the public" as DSLG's Managing Partners. (ECF No. 10-1 at 8.) Carson thus contends that Wilson, Miller, and Diamond must be members of the LLC and share DSLG's side of the litigation, destroying complete diversity. However, in his Declaration in Opposition to the Motion to Vacate, Derek

8

Smith ("Smith") of DSLG avers that as of the date of the Complaint's filing, "the only owners/members of [DSLG] were and still are myself and Zachary Holzberg," both of whom are citizens of New Jersey. (ECF No. 13-1 at 1.)

The Court therefore finds that complete diversity exists, rendering Carson's jurisdictional defense unmeritorious. For the same reasons stated above, the Court denies Carson's Motion to Dismiss.

### iv. Governance of Arbitration Agreement

For at least part of the time Carson was employed at DSLG, the parties had an arbitration agreement (the "Agreement") for disputes arising from "any aspect of the employment relationship." (ECF No. 10-1 at 11.) Carson claims the Agreement governs the current dispute. The Court finds that even if the Agreement is applicable here, Carson waived his right to arbitration by failing to timely assert that right. *Nino v. Jewelry Exch., Inc.*, 609 F.3d 191, 214 (3d Cir. 2010); *see E. Constr. & Elec., Inc. v. Universe Techs., Inc.*, No. CIV.A. 10-1238, 2011 U.S. Dist. LEXIS 1600, at *20 n.5 (E.D. Pa. Jan. 6, 2011) ("If Universe believes that Eastern must arbitrate its claims, Universe should have moved to compel arbitration. Because Universe did nothing, default judgment is appropriate notwithstanding the agreements' arbitration provisions."); *Torus U.S. Servs., Inc. v. Hybrid Ins. Agency, LLC*, No. CIV.A. 14-01630, 2015 U.S. Dist. LEXIS 144025, at *4 n.3 (D.N.J. Oct. 22, 2015) (finding Second Circuit precedent instructive that "a party waives its right to arbitration by defaulting").

### v. Alleged Debt Miscalculation

Carson claims there are calculation errors in DSLG's record of the total balance he owes DSLG. (ECF No. 10-1 at 12-16.) While this defense may be meritorious as it pertains to the mitigation of damages, it is irrelevant to whether Carson is liable for the underlying claims. *See*

9

*Atlas Communs. v. Waddill*, No. CIV.A. 97-1373, 1997 U.S. Dist. LEXIS 17049, at *8 (E.D. Pa. Oct. 31, 1997) (holding that defendant's dispute as to the amount of damages did "not justify setting aside the default" and that such a defense "is relevant to damages, rather than liability").

In considering the totality of Carson's defenses, the Court finds that Carson does not assert a complete defense; he alleges only a partial defense, which is insufficient. While some district courts have vacated entries of default on the showing of a partial defense, *see Grubb v. Evangelisti*, No. CIV.A. 87-1767, 1989 U.S. Dist. LEXIS 5747, at *2 (E.D. Pa. May 23, 1989); *Howard Fischer Associates, Inc. v. CDA Investment Technologies*, No. CIV.A. 94-4855, 1995 U.S. Dist. LEXIS 11357, at *11-12 (E.D. Pa. Aug. 10, 1995), the Third Circuit has always described this element as requiring a "complete defense." *See, e.g., $ 55,518.05 in U.S. Currency*, 728 F.2d at 195; *Tozer*, 189 F.2d at 244. Whether Carson has a complete defense is a critical issue because without a meritorious defense, he could not prevail at trial. *$ 55,518.05 in U.S. Currency*, 728 F.2d at 195 ("There would be no point in setting aside the default judgment . . . if [the defendant] could not demonstrate the possibility of . . . winning.").

In his Motion to Vacate, Carson does not present any argument as to why he is not liable to DSLG for breach of the 2024 Contract (Count VI), which accounts for at least $30,000 of the aforementioned $115,000 figure. (ECF No. 1 at ¶ 46.) Accordingly, Carson has not alleged facts which, "if established on trial, would constitute a *complete* defense to the action." *$55,518.05 in U.S. Currency*, 728 F.2d at 195 (emphasis added). Because the matter of whether a defendant has a meritorious defense is a "threshold question" in ruling on a motion to vacate a default judgment, and the Court has found that Carson has not established he has a meritorious defense, the Court need not reach the remaining factor of culpable conduct. *Id.* Nonetheless, as the Third Circuit has urged district courts to make explicit findings concerning these factors when considering a motion

10

to vacate a default judgment, the Court will do so. *See Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 73 (3d Cir. 1987).

### c. Culpable Conduct

The "standard for 'culpable conduct' in the Third Circuit is the 'willfulness' or 'bad faith' of a non-responding party." *Hritz*, 732 F.2d at 1182. "Appropriate application of the culpable conduct standard requires . . . more than mere negligence." *Estate of Hernandez v. Kretz*, No. CIV.A. 12-3152, 2015 U.S. Dist. LEXIS 91610, at *7 (D.N.J. July 15, 2015) (quoting *Hritz*, 732 F.2d at 1183). "Reckless disregard for repeated communications from plaintiffs and the court . . . can satisfy the culpable conduct standard." *Hritz*, 732 F.2d at 1183.

Here, Carson was undoubtedly aware of the action well before filing his Motion to Vacate. As highlighted in the March 2025 email correspondence between Smith and Carson, Carson's request that Smith withdraw the Complaint means he knew of the Complaint's existence. (ECF No. 13-1 at 5-8.) Carson argues that his delay was due to his inability to retain counsel. (ECF No. 10-1 at 2.) The Court finds this argument difficult to reconcile with Carson's pro se filing of the instant Motions within two days of the entry of default judgment.

There is nothing before the Court to suggest that Carson's failure to timely participate in this matter is due to anything other than culpable conduct, namely due to his extensive history of evading legal procedure. As a panel of this Court observed in *In re Carson*, No. MISC.A. 24-5, 2025 U.S. Dist. LEXIS 197824, at *22 (E.D. Pa. July 8, 2025), *report and recommendation adopted*, *In re Carson*, 2025 U.S. Dist. LEXIS 198245 (E.D. Pa. July 29, 2025)—which disbarred him from this Court—"[t]he scope of Carson's pattern of professional misconduct and legal neglect is astonishing. In all[] . . . Carson has been sanctioned, criticized, or directed to comply with his discovery or professional obligations in some 30 cases in this Court." 2025 U.S. Dist.

11

LEXIS 197824, at *22. The panel noted that Circuit Judge William C. Bryson, who sat by designation in the District of Delaware regarding a case Carson initiated roughly two years before DSLG fired him, "well described Carson's misconduct in almost all 34 cases we have reviewed" in his summary of Carson's misconduct in the Delaware case: "[T]his is not just a case of dilatoriness; it is a case of repeated failure to produce required materials amounting to almost complete nonresponsiveness." 2025 U.S. Dist. LEXIS 197824, at *22-23. As illustrated, Carson is no stranger to either "[r]eckless disregard for repeated communications" or the consequences of such disregard. *Hritz*, 732 F.2d at 1183.

In sum, upon careful consideration of the three factors of no prejudice to DSLG, no availability of a meritorious defense, and a pattern of obfuscation tactics evidencing Carson's culpability, the Court finds that these factors, on balance, weigh in favor of upholding the default judgment. It strains credulity for this Court to believe that Carson had good cause for his delay, "a position that, unfortunately, is all too familiar to [him]." *Sadis & Goldberg, LLP v. Banerjee*, No. CIV.A. 19-1682, 2020 U.S. Dist. LEXIS 133865, at *12 (W.D. Pa. July 28, 2020).

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Carson's Motion to Vacate Default Judgment (ECF No. 10) and Motion to Dismiss for Lack of Subject Matter Jurisdiction (ECF No. 12.) An appropriate Order follows.

BY THE COURT:

/s/ Kelley B. Hodge
_____
HODGE, KELLEY B., J.